**UNITED STATES BANRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 19-20400 |
| DONNA J. BARNES, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | October 15, 2019 |
| ) | |

## INTERESTED PARTIES' OBJECTION TO DISCLOSURE STATEMENT

Pursuant to Fed. R. Bankr. P. 3017, interested parties RTM Capital Partners, Inc., LPV, 15-Hermitage, LLC and Matthew Curtis (collectively, "Lienholders") respectfully object to debtor Donna J. Barnes' (the "Debtor") Disclosure Statement for Debtor's Plan of Reorganization filed October 4, 2019 [ECF # 127]. The Debtor's disclosure statement fails to provide adequate information to explain or address the important role that liens held by non-parties against James Barnes' interests in properties jointly owned by the Debtor and Mr. Barnes. If not treated appropriately, these liens could jeopardize the Debtor's entire reorganization plan. This information must be raised to stakeholders.

1. **BACKGROUND**

The Debtor filed her Chapter 11 Voluntary Petition on March 14, 2019 [ECF #1]. Pursuant to the Debtor's Amended Schedules [ECF # 48], her two homes are her primary assets, in particular her Rhode Island Home. The Debtor scheduled real property at 145 Deercliff Road, Avon, Connecticut (the "Connecticut Home") and a second home at 33 Bay Street, Westerly, Rhode Island (the "Rhode Island Home"). The Debtor owns both the Connecticut Home and the Rhode Island Home jointly with her husband James Barnes. Mr. Barnes is not a debtor in bankruptcy.

Long before the Debtor's bankruptcy, the Lienholders obtained a judgment

against Mr. Barnes in the United States District Court for the District of Vermont. Lienholders subsequently filed judgment liens against Mr. Barnes' interest in both the Connecticut Home and the Rhode Island Home. Specifically, the Lienholders recorded a judgment lien in the amount of $6,250,976 against Mr. Barnes' interest in the Connecticut Home on July 25, 2018 and a writ of execution for approximately[1] the same amount in Westerly Rhode Island on September 5, 2018. Both of these judgment liens remain completely unpaid.

According to the Debtor's schedules, interested parties Dan Solaz ($320,917.16), Reinhart Foodservice, LLC ($1,592,280.19) and Mark Brett ($350,000) also hold writs of execution or attachments against the Mr. Barnes' interest in the Rhode Island Home. Further, the Westerly Land Records appear to reflect that LH VT House, LLC holds a writ of execution for $1,182,639.80 against Mr. Barnes' interest in the Rhode Island Home.

The Debtor filed her Disclosure Statement on October 4, 2019. According to her Disclosure Statement, her plan fundamentally depends on the sale of the Rhode Island Home. The Debtor has not proposed to sell the Rhode Island Home under 11 U.S.C. § 363, however, but appeared to seek authority to sell the property through the plan subject only to "proposed bidding procedures" (not a formal 363 motion or adversary proceeding naming the Lienholders or other secured creditors of Mr. Barnes holding liens against the Rhode Island Home). Similarly, the Debtor seeks to simply transfer title to the Connecticut Home to the first position mortgagee without any 363 sale process. The Debtor's disclosure statement and plan are fundamentally flawed because confirmation of a plan (without an accompanying 363 sale order) will *not* allow her to transfer either the Rhode Island Home or Connecticut Home free and clear of liens that were lodged against Mr. Barnes'

---

[1] The total number in Rhode Island is slightly higher due to the addition of post-judgment interest.

2

interest in these homes. By failing to explain this reality to parties in her Disclosure Statement, the Debtor has not adequately explained the risks inherent with selling real estate subject to millions of dollars of liens.

## 2. LEGAL STANDARD FOR DISCLOSURE STATEMENT

The Debtor must provide adequate information to stakeholders before proceeding forward with a plan. Pursuant to 11 U.S.C. § 1125(b), an acceptance or rejection of a plan may not be solicited until after the Court approves a disclosure statement "containing adequate information." Section 1125(a) provides a specific definition of "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

"A disclosure statement should likewise contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990). "A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation." *In re 266 Washington Associates*, 14 B.R. 275, 288 (Bankr. E.D.N.Y. 1992).

The Debtor's disclosure statement does not provide adequate information concerning the impact of liens against the Rhode Island Home and Connecticut Home.

2261102

### 3. THE LIENS COULD JEOPARDIZE ANY SALE THROUGH A PLAN

The Lienholders' writ of execution and those of other similarly situated parties will practically jeopardize any sale of the Rhode Island Home conducted through a plan. While the Debtor may provide for the sale of substantially all of *her* assets through a plan pursuant to 11 U.S.C. § 1123(b)(4), the Bankruptcy Code does not permit her to extinguish liens held by non-creditors (such as the Lienholders) against property owned by a non-debtor (Mr. Barnes) through confirmation of a plan. Section 1123(b)(4) provides that a plan may "provide for the sale of all or substantially all of the **property of the estate**, and the distribution of the proceeds of such sale among the holders of claims or interests." Section 1123 does not permit the sale of property belonging to a non-debtor through a plan or otherwise permit her to modify lien rights of non-creditors against a non-debtor's interest in real estate. As a result, if the Debtor chooses to sell her property through a plan, she will be selling the property subject to the liens on Mr. Barnes' interest.

Rhode Island law is clear that the Barnes cannot avoid the Lienholders' Liens simply by jointly agreeing to sell the Rhode Island Home. In Rhode Island, "a spouse's interest in real property held by the entirety is legally sufficient to sustain a prejudgment attachment notwithstanding the fact that that interest is not subject to levy and sale on execution." *Cull v. Vadnais*, 122 R.I. 249, 257 (R.I. 1979). If both spouses jointly elect to sell the property, or if one spouse transfers his or her interest to the other, "an attachment is not defeated by a conveyance of the property." *In re Gibbons*, 459 A.2d 938, 940 (R.I. 1983). In that situation, "the attachment is not defeated as the third-party grantee takes subject to the attachment lien." *Id.*

Given that: (1), the Debtor does not have the power to transfer property *pursuant to a plan* free and clear of non-creditors' liens against non-debtors; and (2) those liens will survive the Debtor's and Mr. Barnes' sale to a third party - any third

party buying the Rhode Island Home will be taking it subject to nearly $10 million in liens.[2] Obviously, this would dramatically impact the sale price (if a sale could even close given the potential title insurance implications) and must be disclosed if the Debtor continues to pursue this path.

Fortunately for the Debtor, she might instead a sale pursuant to 11 U.S.C. § 363 as opposed to selling property through a plan. Rhode Island has previously approved of the use of a § 363(h) sale to dispose of property held in the entirety by husband and wife. *In re Gibbons*, 52 B.R. 861 (Bankr. D. R.I. 1985). "In the event of such as sale by the [Debtor], one-half of the proceeds goes to the non-debtor spouse, and the other half remains in the estate for distribution to creditors…." *Id.* Mr. Barnes' portion of the funds "are not distributed by the trustee to unsecured creditors, since the nondebtor is not in bankruptcy. However, liens of secured creditors would be paid in order to sell the property or else would attach to the nondebtor's proceeds." *In re Sauro*, No. 05-40202(RTL), 2008 WL 2237036, at *2 (Bankr. D. N.J. May 30, 2008 (citing 1-2 COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 2.06[3] (2008)).

Unlike § 1123, § 363(h) does provide a mechanism for the Debtor to sell both the estate's interest in property together with the undivided interest of a co-owner so long as the conditions of § 363(h) are satisfied. Indeed, the Debtor just recently initiated an adversary proceeding against Mr. Barnes seeking this relief captioned *Barnes v. Barnes*, Case No. 19-02025. What purpose would this adversary proceeding have if the Debtor did not recognize that she needed the authority under § 363(h) to sell her interest jointly with Mr. Barnes' interest? For some reason, however, the Debtor failed to name the Lienholders and other similarly situated

---

[2] This approximately $10 million figure is assuming arguendo that the Debtor can actually modify the rights of UBS and Shem Creek in a plan, but the Lienholders will not further analyze that question at this time.

5

parties as defendants in the adversary proceeding to obtain the Court's authority to sell the properties free and clear of their liens under § 363(f). Without this procedure, the Debtor cannot sell the property free and clear of almost $10 million in liens.

The § 363 sale process will provide important due process considerations for any potential modification of the Lienholders' liens. As one protection, the Lienholders would be permitted under § 363(e) to seek adequate protection as a condition of the sale of the Rhode Island Home. Indeed, the Lienholders would request that they obtain a replacement lien on Mr. Barnes' interest in any sale proceeds and that such funds be paid to the Lienholders at closing or otherwise be escrowed to prevent their dissipation to other uses.

The Debtor should amend its disclosure statement and plan to incorporate the proper sale procedures, or at the very least disclose the tremendous economic risks associated with selling the Debtor's real property through a plan instead of a § 363 sale. As a result, the Lienholders object to the Debtor's Disclosure Statement.

> INTERESTED PARTIES,
> RTM CAPITAL PARTNERS, INC.;
> LPV, 15-HERMITAGE, LLC; and
> MATTHEW CURTIS
>
> By: */s/ Kevin J. McEleney*
>     Kevin J. McEleney (ct27673)
>     Updike, Kelly & Spellacy, P.C.
>     100 Pearl Street, PO Box 231277
>     Hartford, CT 06123
>     Tel.: (860) 548-2600
>     Fax: (860) 548-2680
>     kmceleney@uks.com
>     *Their Attorneys*

2261102