UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| DONNA J. BARNES, | ) | Case No. 19-20400 |
| | ) | |
| Debtor | ) | |
| | ) | |

## MOTION FOR APPROVAL OF COMPROMISE

TO THE HONORABLE JAMES J. TANCREDI, UNITED STATES BANKRUPTCY JUDGE:

Donna J. Barnes, debtor and debtor-in-possession (the "Debtor"), by and through her counsel, Reid and Riege, P.C. and Salter McGowan Sylvia & Leonard, Inc., hereby files, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Bankruptcy Code § 363(j), a Motion for Approval of Compromise (the "Motion"), which Motion relates to a compromise entered into by and among the Debtor, on the one hand, and RTM Capital Partners, Inc. ("RTM"), LPV-15, Hermitage, LLC ("LPV-15"), and Matthew Curtis ("Curtis"; together with RTM and LPV-15, the "RTM Parties"), on the other hand. In support of the Motion, the Debtor respectfully represents as follows:

1.      On March 14, 2019 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut, Hartford Division. Since the Filing Date, the Debtor has continued in possession and management of her properties as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

1

2.  The Debtor and her husband, James R. Barnes (the "Co-Owner" or "Mr. Barnes"), who is not a debtor under the provisions of the Bankruptcy Code, owned real estate, as tenants by the entirety, at 33 Bay Street, Westerly (Watch Hill), Rhode Island (the "Property").

3.  On October 4, 2019, the Debtor filed a disclosure statement and plan of reorganization (the "Plan"). Generally speaking, the basis of the Plan was to sell the Property, and to utilize the Debtor's share of the proceeds to fund payments to her creditors. On that same date, the Debtor also filed a complaint against the Co-Owner with respect to the Property. A purpose of that complaint was to seek Court approval of the sale of both the Debtor's and the Co-Owner's interests in the Property, free and clear of any and all liens on the Property, as provided under Bankruptcy Code § 363. On October 31, 2019, the Debtor filed an amended complaint (the "Complaint") which, *inter alia*, named as defendants the Co-Owner and all of the lien holders on the Property—both the two mortgagees holding joint claims against the Debtor and the Co-Owner, and the later-recorded five judicial liens of creditors, including the RTM Parties, who hold claims only against Mr. Barnes and not the Debtor. Certain of the defendants in the Complaint challenged the Debtor's ability to sell the Property.

4.  The Property was encumbered by these liens[1], in the following order of recording or priority:

    (1) the statutory property tax liens of the Town of Westerly and Watch Hill Fire District[2];

---

[1] Information about such liens comes from the Court's December 19, 2019 "Ruling and Memorandum of Decision Denying Defendants' Motions to Dismiss" (Doc no. 36), which in large part was derived from the filed claims of such lienors.

[2] The property tax lien of the Town of Westerly arises statutorily under R.I. Gen. Laws §§ 44-9-1 and, with exceptions not relevant here, is "superior to any other lien, encumbrance, or interest in the real estate whether by way of mortgage . . . or otherwise." The same is true of the lien of the Watch Hill Fire District (in the asserted amount of $6,077.21 (Claim #6)). *See* R.I. Gen. Laws § 44-9-3.

  (2) a mortgage on the joint interests of the Debtor and Mr. Barnes held by UBS Bank, USA ("UBS"), in the asserted amount of $2,018,585.34 (Claim #3);

  (3) a mortgage lien on the joint interests of the Debtor and Mr. Barnes held by Shem Creek Haystack, LLC ("Shem Creek"), in the asserted amount of $4,300,332.68 (Claim #7);

  (4) a judicial lien solely against the interest of Mr. Barnes held by the RTM Parties, in the asserted amount of $6,285,173.17 (Amended Sched 2.6);

  (5) a judicial lien solely against the interest of Mr. Barnes held by Dan Solaz, in the asserted amount of $320,917.16 (Amended Schedule D, 2.1);

  (6) a judicial lien solely against the interest of Mr. Barnes held by Reinhart Foodservice, LLC ("Reinhart"), in the asserted amount of $1,523,229.11 (Claim #12);

  (7) a judicial lien solely against the interest of Mr. Barnes held by Mark Brett, in the asserted amount of $350,000.00 (Amended Schedule D, 2.3); and

  (8) a judicial lien solely against the interest of Mr. Barnes held by LH VT House, LLC ("LH"), in the asserted amount of $1,182,639.80 (ECF No. 8).

5. Defendants Reinhart and LH filed a Motion to Dismiss the Complaint, which the Court denied for the reasons set forth in its December 19, 2019 Ruling and Memorandum of Decision Denying Defendants' Motion to Dismiss, (ECF No. 36).

6. The parties proceeded to a trial on the Complaint. After a two-day trial, the Court, on April 13, 2020, issued its Memorandum of Decision Approving the Real Property Sale Free and Clear of Liens, Claims, Interests and Encumbrances and Authorizing Closing (the "Decision").

7. With respect to the liens on the Property, the Decision provides, *inter alia*, that "[u]nless the Lien holders have agreed to other treatment, any party holding a right, lien, claim, interest or encumbrance on the Property is granted a replacement right, lien,

3

claim, or interest in the sale deposit and the Closing proceeds to the extent, priority and validity to be determined by a subsequent order of this Court, with all parties reserving their rights until such a determination." Decision, para. 26, at 13.

8. On April 28, 2020, the Debtor and the Co-Owner closed on the sale of the Property with the D Trust, which submitted the highest bid for the Property. The total purchase price for the Property was $10,403,000. At the closing, and in accordance with the Decision, the Debtor paid the first mortgage held by UBS, the second mortgage held by Shem Creek, and the statutory tax liens of the Town of Westerly and the Watch Hill Fire District. As more particularly described in that certain Certificate of Closing filed by the Debtor, the remaining net proceeds of sale are being held by the Debtor's counsel in an interest-bearing account. As of May 5, 2020, the amount on deposit was approximately $3,687,705.59.[3]

9. As indicated in paragraph 7 above, the Decision leaves open, for Court determination, the ultimate distribution of those remaining net proceeds. That issue, however, has already been extensively briefed and argued by the various parties, both as part of the hearing on Reinhart's and LH's motions to dismiss the Complaint and the subsequent trial on the Complaint. See, e.g., Debtor's memoranda of law filed on March 19, 2020 (ECF No. 87) and March 27, 2020 (ECF No. 122), which are incorporated herein. Since the issue first arose, the Debtor, backed by substantial legal authorities that have been presented to the Court, has advocated that what would be the remaining net proceeds of sale be split evenly, that is, 50:50, between the Debtor's estate and the interests of the Co-Owner. Reinhart and LH, on the other hand, have contended that such remaining proceeds should be made available, in full, to the

---

[3] Certain administrative claims to be considered and approved by the Court, including of the auctioneer, are to be paid from such remaining proceeds. See Bankruptcy Code § 363(j) (providing for distribution of proceeds of sale "less the costs and expenses . . . of such sale . . .").

4

lienors on the Property, in the order of their priority, despite that such lienors hold no claims against the Debtor.

10. However, overarching this legal dispute is the practical reality now that, given the sales price of the Property, the statutory municipal liens and joint mortgage obligations asserted against it, and the amount and priority position of the RTM Parties' judicial lien, the RTM Parties are the only lienors who hold a stake in the distribution of the remaining net proceeds. Stated more succinctly, where the RTM Parties' lien is now first in line to be paid after payment of the statutory liens and joint mortgage obligations, and where the amount owed to the RTM Parties ($6,285,173.17) far exceeds the amount of the remaining net proceeds, even assuming arguendo that Reinhart and LH were correct in their legal arguments, the RTM Parties would still be the only parties in a position to claim an entitlement to such proceeds. Reinhart and LH are simply "out of the money" at this point[4] and the Debtor submits that, as a practical matter, the Court need not take up or decide the tenancy by entirety arguments presented in the main case and this adversary proceeding.

11. Accordingly, in connection with the closing on the Property, discussions on the ultimate distribution of the net sales proceeds began in earnest among the Debtor and the RTM Parties, as a result of which, and subject to approval of this Court, they have agreed that:

    a. The remaining net proceeds of the sale of the Property(after payment, or reservation for payment, of the $25,000 earmarked for the Debtor's professionals as part of the Court approved settlement between the Debtor and Shem Creek, and the $180,250 constituting

---

[4] The strong likelihood of this practical reality materializing was noted some two months ago, before any trial: "Further, regardless of the outcome of the potential priority dispute between the Debtor and the subordinate lienholders, there is never likely to be a recovery for the objecting creditors. With a $10.3 million sales price, there will be estimated sale proceeds of less than $3.2 million available for all parties after paying closing costs, taxes, UBS and Shem Creek. The RTM Parties' lien alone is almost $6.3 million . . . [and] the RTM Parties would need to be paid in full before Reinhart or LH VT could recover anything." RTM Parties Trial Memorandum, filed March 19, 2020 at 6 (ECF No. 89).

the fees sought by the Debtor's Court approved auctioneers), shall be split evenly between the Debtor's estate and the interests of the Co-Owner, with such interests being subject to the lien of the RTM Parties;

      b.     Upon entry of an order granting the Motion, counsel to the Debtor is authorized to disburse, from the interest-bearing account it is holding in this case, to Updike, Kelly and Spellacy, P.C., as counsel to the RTM Parties, and for ultimate distribution to the RTM Parties, the proceeds attributed to the interests of the Co-Owner, which proceeds total approximately $1,593,033.67; and

      c.     The RTM Parties make this agreement with the understanding that the Debtor and the RTM Parties are the only remaining parties with standing to any claim to the sale proceeds. By making this agreement with the Debtor, the RTM Parties and the Debtor agree that the RTM Parties are not subordinating their debt to any other creditors who may have claimed a lien in the sale proceeds.

12.     By this Motion, the Debtor seeks entry of an order approving the compromise described herein and empowering her to perform in accordance therewith. The Debtor submits that the proposed settlement is fair, equitable, and reasonable and meets the tests for approval by this Court. The settlement resolves a key issue remaining in this case in a fashion which benefits each of the Debtor's estate and the RTM Parties, who now stand to receive money for their lien rights against the interests of the Co-Owner. This compromise and settlement will allow the Debtor to move forward with a resolution of her Chapter 11 case, through which there is expected to be a 100% dividend paid to her creditors with allowed claims.

The compromise is a result of arms-length discussions and it avoids the time and costs of litigation which have already proven to be substantial, in this individual bankruptcy case.

6

Further, the settlement is also in accord with relevant law, as previously briefed and argued to this Court, and summarized below.

13. Bankruptcy Code § 363(j), which deals with the distribution of the proceeds of a § 363 sale, is implicated at this point. It is an express corollary to § 363 (h) (which was a key provision of the Complaint). Section 363(j) provides that:

> (j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

Under the Bankruptcy Code, a debtor may exempt "any interest in property in which the debtor had, *immediately before the commencement of the case*, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law." Bankruptcy Code § 522(b)(3)(B). (Emphasis added). Thus, this exemption, as is true of exemptions in general, "speaks" and fixes interests in property as they exist as of the petition date. *Xiao v. Chorches*, 610 B.R. 183 (D. Conn. 2019) ("…it is 'hornbook bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition.' \*\*\*'[The] proper date for determining whether [an] exemption exists is the petition date.' (citing *Owen v. Owen*, 500 U.S. 305, 314 n.6, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991))). 'This means the Court must 'focus only on the law and facts as they exist on the date of filing the petition.' ") (internal citations omitted); and *Hull v. Rockwell*, 610 B.R. 1, 10 (D. Maine 2019) ("It is a basic principle of bankruptcy law that exemptions are determined when a petition is filed." *In re Cunningham*, 513 F.3d 318, 324 (1st Cir. 2008)).

14. A number of rulings addressing tenancies by the entirety do not progress to the point of having to make determinations about actual distributions of proceeds from the sale of a

25620.000/728890.2

tenancy by the entirety property but, instead, stopping short of that, deal in the abstract with somewhat amorphous tenancy by the entirety concepts in a hypothetical context. Courts that have dealt with the actual distribution of the proceeds of a bankruptcy court-approved sale of a tenancy by the entirety property where, as here, only one spouse has filed for bankruptcy, — have held that the bankruptcy debtor's share of such proceeds is one-half of the equity in the otherwise undivided interest that remains after satisfaction of those secured debts owed by the debtor *jointly* with his spouse. *See, e.g., In re Oberlies,* 94 B.R. 916, 918–19 (Bankr.E.D.Mich.1988); *In re Monzon,* 214 B.R. 38 (Bankr.S.D.Fla.1997); *In re Cerreta*, 116 B.R. 402, 405–06 (Bankr.D.Vt.1990); *In re Rentfro*, 234 B.R. 97, 99–100 (Bankr.W.D.Mo.1999); *In re Zella*, 196 B.R. 752, n. 4 (Bankr.E.D.Va.1996); *In re Ginn*, 186 B.R. 898, 903 (Bankr.D.Md.1995); *In re Chandler*, 148 B.R. 13, 15 (Bankr.E.D.N.C.1992). And even more directly applicable, the United States Bankruptcy Court for the District of Rhode Island, more than 30 years ago (in the fifth court opinion on a particular tenancy by the entirety case that had been presented to federal courts and the Rhode Island Supreme Court), stated in *In re Gibbons,* 52 B.R. 861, 864 (Bankr. D. R.I. 1985)[5] that:

> In the event of such a sale [of a tenancy by the entirety property] by the trustee [of only one spouse], one-half of the proceeds goes to the non-debtor spouse, and the other half remains in the [bankruptcy] estate for distribution to creditors, subject to the debtor's...exemptions allowed by federal or state law.

The authors of West's *Bankruptcy Exemption Manual* (June 2019, § 4:11, p. 174), after noting that property sold, as proposed here, "under § 363(h) is distributed according to section 363(j)",

---

[5] The bankruptcy court's ruling on another point in *Gibbons*—addressing whether property held in a tenancy by the entirety was "exempt from process" as that phrase is used in Bankruptcy Code § 522—was effectively reversed a year later through *In re Furkes*, 64 B.R. 232, 235 (D. R.I. 1986) (court holding that tenancy by entirety property is "exempt from process" as contemplated under the Bankruptcy Code and thus is exempt). This *Furkes* ruling made, as here, in the context of a judicial lien creditor holding a claim against only one spouse, remains good law and the center piece ruling governing Rhode Island tenancy by the entirety interests in a bankruptcy context.

8

stated: "Most courts have concluded that the debtor's interest in the proceeds is one-half." *Citing In re Himmelstein*, 203 B. R. 1009 (Bankr. M.D. Fla. 1996) (citing *In re Blair* 151 B. R. 849, 852 (Bankr. S.D. Oh. 1992), subsequently affirmed, 33 F.3d 54 (6th Cir. 1994); *In re Ginn* 186 B.R. 898, 903 (Bankr. D. Md. 1995)."

15.    The court in *In re Green*, No. 13-10204-MSH, 2018 WL 4944988 at 6*, n. 4 (Bankr. D. Mass. Oct. 11, 2018)*,* in addressing proceeds of a § 363(h) tenancy by the entirety sale and their disposition, likewise stated that "…at this stage, I need not determine the appropriate formula for dividing any sales proceeds between the bankruptcy estate and Ms. Green [the non-debtor spouse], except to note that a 50-50 distribution appears to offer one reasonable approach. *See In re Branigan* 501 B.R. 151 (Bankr. W.D. N.Y. 2013)." The court in *In re Branigan* ruled that a chapter 7 debtor's claim to a 50% interest in a tenancy by the entirety property held with his non-debtor spouse would be accepted as presumptively reasonable. The same court, just shortly thereafter, in *In re Naples* 521 B.R. 715 (W.D. N.Y. 2014), after considering the rationale and ruling in *Bradigan*, noted that "[Bankrupcy Code] §363 (j) unavoidably leads back to the *Bradigan* result—a *presumption* of 50-50 ownership of the proceeds of the sale. (The fact that the bankruptcy estate is 'seized of the whole' does not mean that it owns all of the proceeds, leaving the non-debtor spouse with nothing.) And the debtor spouse *in* bankruptcy may claim his or her exemption against the portion of the proceeds allocation to the § 541 estate." *Naples* 521 B.R. at 718.

16.    Moreover, and particularly when one considers that the impetus of the historical evolution of tenancy by the entirety law in Rhode Island has been to protect the interests of a married woman in property (explained in the Debtor's earlier filed legal memorandum), it would be both legally and intellectually irreconcilable and yield an irrational result and unjustifiable

9

windfall, to find the judicial lienors, who have claims only against Mr. Barnes, should be permitted to invade and share in the Debtor's properly allocated interest in the remaining proceeds of the sale of the Property. On this point, in *In re McRae,* 308 B.R. 572, 578 (N.D. Fla. 2003), the court held that: "Since a debtor's individual creditors could never have reached the entireties property under Florida law, they cannot obtain a different and more favorable result in bankruptcy by sharing in the distribution of these assets." Although for the practical reasons explained above, these legal points are not directly implicated on the present facts and circumstances, it is helpful in considering the Motion to note that this same windfall, and others identified below, would likewise be conferred on the lienors holding claims only against the Co-Owner if the Court were to deny the Debtor 50% of the remaining net proceeds of sale.

        a.      It would result in a "turning on its head" the tenancy by the entirety concept - a form of ownership intended to protect a wife and spouse if that concept were somehow used as a basis for effectively *depriving* the Debtor of her otherwise allocable interest in the Property. Indeed, it would turn that "shield" into a "sword" and obviously put her in a drastically *worse* position than if the Property were held (i) in a joint tenancy, for example, where she would be entitled to receive at least 50% of the proceeds of sale, after payment of the joint mortgage obligations—and with nothing going to Mr. Barnes' judicial lienors; or (ii) in a tenancy in common, which a tenancy by entirety, even if broken, would become, with her in that instance likewise receiving such 50% interest with, again, nothing going to Mr. Barnes' judicial lienors. *See* R.I. Gen. Laws § 34-3-1, providing that a tenancy in common is presumed in respect to holdings between two parties.

        b.      Further, such a ruling, which would purport to give judicial lienors of Mr. Barnes rights to what are very substantial proceeds that would otherwise be allocable to the

10

Debtor, and, of course, never available to such lienors, could not be squared with what such lienors actually held "immediately before the commencement of the case." *See* Code § 522(b)(2)(B).  What they held at that point, in respect to the interests of the Debtor in the Property, is a mere expectancy interest—that is, on these facts, the possibility that the Debtor could predecease the Co-Owner.  The windfall to such judicial lien holders is seen (as one example) in the paltry sum of $5,000 that was offered for such an expectancy interest in *In re Ryan*, 282 B.R. 742, 746 (D. R.I. 2002), in comparison to what those lienors seek here, when, "immediately before the commencement of the case," those lienors held the selfsame type of expectancy interest as was at stake in *Ryan*.  The paltriness of that sum is a direct reflection of the paltriness of the interest, as ascribed by tenancy by the entirety law, of one holding a claim against only one spouse, the same interest that such lienors held.

        c.        Additionally, as a number of courts have held, a tenancy by the entirety can continue as to proceeds of the sale of tenancy by the entirety real property *Smith v. Tipping*, 346 Mass. 590, 211 N.E. 2nd 231 (Mass. 1965); and *In re Wall's Estate*, 440 F.2d 215(D.C. Cir. 1971) ("Where as in the District of Colombia, personalty can be held by the entireties, the great weight of authority is to the effect that, absent a contrary arrangement by the parties, an estate by the entireties preexisting in particular property continues automatically in its derivatives on disposition.")  Note that under the Rhode Island Married Woman's Act, R.I. Gen. Laws §15-4-4, one may create "any estate [such as a tenancy by the entirety] or interest in any ... personal property ... ." (emphasis added).  The remaining proceeds of the sale of the Property, therefore, would continue to be held in a tenancy by the entirety.  Indeed, a number of bankruptcy courts, applying § 522(b)(2)(B), have specifically held that a tenancy by the entirety exemption is available under that provision in personal property.  *See, e.g., In re Garretson*, 6 B.R. 127, 130

11

(Bankr. E.D. Tenn. 1980) (tenancy by entirety exemption in a certificate of deposit); *In re Wincorp, Inc.*, 185 B.R. 914 (Bankr. S.D. Fla. 1995) (tenancy by entirety exemption in bonds); *In re Barsotti*, 7 B.R. 205, 208 (Bankr. W.D. Pa. 1980) (tenancy by entirety exemption in personal property).

17. Bankruptcy Rule 9019(a) permits the Court, following notice and a hearing as provided by Bankruptcy Rule 2002, to approve a compromise or settlement of claims.  Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval.  However, the standards for approval of settlements in bankruptcy cases are well established and focus upon whether the proposed settlement is reasonable and is in the best interests of creditors.  In *Protective Committee for Independent Stockholders of TNT Trailer Ferry v. Anderson*, 290 U.S. 414, 424 (1968), *reh'g denied*, 391 U.S. 909 (1968), the seminal case on approval of settlements in bankruptcy cases, the United States Supreme Court held that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, and explained as follows:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.  Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.  Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

(citations omitted).

18. The United States Court of Appeals for the Second Circuit has instructed that the responsibility of the judge "is not to decide the numerous questions of law and fact raised by appellants, but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied sub nom.*, *Cosoff v. Rodman*, 464 U.S. 822 (1993). *See also In re Purified Down Products Corp.*, 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990); *In re Carla Leather, Inc.*, 44 B.R. 457, 470 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1984). In evaluating the propriety of settlement, the court need not conduct a trial, "mini-trial", or "rehearsal of the trial" on the merits to actually resolve the extant factual and legal issues, but must simply consider whether, against the background of those issues, the settlement is reasonable. *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972), *cert. denied sub nom.*, *Benson v. Newman,* 409 U.S. 1039 (1972). *See also In re International Distribution Centers, Inc.,* 103 B.R. 420, 423 (S.D.N.Y. 1989); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).

19. The Debtor submits that the proposed settlement falls within the range of reasonableness necessary to approve it under Bankruptcy Rule 9019. As stated above, it resolves a key remaining issue in the Debtor's case on terms which are fair and reasonable to each of the Debtor's estate and the Co-Owner's interests. It is in accord with applicable law, is the result of arms-length discussions among the only parties who, as a practical legal matter, are entitled to the remaining net proceeds at this point, and it avoids the time and costs of further litigation, which have already been substantial.

WHEREFORE, the Debtor respectfully requests that the Court enter an approving the compromise described above and granting her such other and further relief as is just and equitable.

Dated at Hartford, Connecticut, this 26th day of May, 2020.

                                                DONNA J. BARNES

                                                By /s/ Jon P. Newton
                                                Jon P. Newton, Esq.
                                                Federal Bar No. ct03376
                                                Reid and Riege, P.C.
                                                One Financial Plaza
                                                Hartford, CT 06103
                                                jnewton@rrlawpc.com
                                                (860) 278-1150

                                                Matthew J. McGowan, Esq.
                                                Federal Bar No. ct08136
                                                Salter McGowan Sylvia & Leonard, Inc.
                                                56 Exchange Terrace, Suite 500
                                                Providence, RI  02903
                                                mmcgowan@smsllaw.com
                                                (401) 274-0300